[ECF FILING CLEARED BY CSO VIA EMAIL]

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PETITIONERS SEEKING HABEAS | ) | Misc. No. 08-0444 (TFH) |
| CORPUS RELIEF IN RELATION TO | ) | |
| PRIOR DETENTIONS AT | ) | Civil Action No. 05-0878 (CKK) |
| GUANTANAMO BAY | ) | |
| | ) | |

STATUS REPORT

The petitioner, RAHMATTULAH, by and through undersigned counsel, hereby responds to the Court's order of July 1, 2008, with this status report on various factual and procedural issues in this case. First, this report will include a short narrative of the factual background of Mr. Rahmattulah's imprisonment and detention between 2002 and today. Second, this report will describe the procedural events pending in this court and before Judge Kollar-Kotelly. Third, this report will conclude with proposals to promptly, yet fairly, advance these proceedings.

Factual Background

In 2002, local officials in Mr. Rahmattulah's rural province arrested him at his home, imprisoned him, and handed him over to the United States military. After stints in at least one prison in Afghanistan, the United States military transferred Mr. Rahmattulah to the prison at Guantanamo Bay, Cuba. He remained there for approximately six years.

In early 2008, the government notified counsel that it intended to transfer Mr. Rahmattulah from the Guantanamo Bay prison. Counsel for Mr. Rahmattulah agreed to waive the requirement for 30 days notice. The district court signed an order permitting the government to transfer Mr. Rahmattulah without providing the 30 days notice, [Doc. 37], and in early May, 2008, the government flew Mr. Rahmattulah away from the prison at Guantanamo Bay. [Doc. 38].

Counsel believes that the government transported Mr. Rahmattulah immediately to the Pol-e-Charky prison outside Kabul, Afghanistan, where he remained for at least one month. So far as counsel knows, the basis for the continued detention is the purported "enemy combatant" status imposed upon Mr. Rahmattulah by the United States government. Counsel is not aware of any distinct charges or criminal allegation by the Afghan government against Mr. Rahmattulah, apart from the allegations made by the United States over the last six years.

According to reports counsel has received from Afghanistan, Mr. Rahmattulah has been moved from the Pol-e-Charky prison to a private home in the Kabul area, where he is apparently being held in continuing detention. According to these reports, Mr. Rahmattulah is not free to leave the home and is under armed guard 24 hours per day. Counsel knows nothing more about the circumstances of Mr. Rahmattulah's present imprisonment. Counsel will continue to investigate this state of affairs.

<u>Legal Issues</u>

Counsel will address each of the questions expressed by this Court in its order dated July 3, 2008, Doc. 41, as well as additional concerns articulated by the Court during the status conference in other Guantanamo Bay cases on July 8, 2008.

    *1.    The Pending Show-Cause Order Before Judge Kollar-Kotelly*

On June 18, 2008, Judge Kollar-Kotelly issued an *Order* requiring Mr. Rahmattulah to show cause why this case should not be dismissed in light of his transfer to Afghanistan. [Doc. 39]. Counsel's response to the order is due on Friday, July 18, 2008. It appears that Judge Kollar-Kotelly intends to resolve the question of whether or not the government's transfer of Mr. Rahmattulah to a prison in another country extinguishes the pending petition for habeas corpus. In light of this pending issue, counsel proposed that this Court await a ruling from Judge Kollar-Kotelly before it addresses the issues set forth below.

    *2.    The Case Was Stayed, But Not Dismissed, Pending Resolution of Boumediene*

The court stayed this case — but did not dismiss it — pending the *Boumediene* decision. [Doc. 27]. However, the district court's recent order to show cause suggests that the court has lifted the stay at least to resolve the issue outlined above. To the extent that the case is still under a stay, counsel urges this Court to summarily lift the stay, in light of *Boumediene*.

    *3.    The Factual Return Has Never Been Disclosed to Mr. Rahmattulah*

Counsel for Mr. Rahmattulah has not received a factual return in this case. (Counsel did not file a DTA petition and there is no factual return in that context.) Therefore, counsel urges this Court to order the government to provide the factual return as soon as possible. Counsel proposes that the Government provide the order within 30 days. The typical return in these cases is the CSRT transcript, which is often only a few dozen pages of dialogue between the tribunal, the personal representative, and the prisoner himself. It requires only a modest effort by the government to provide these records. It may be as simple as hitting the print button on the computer.

    *4.    The Duplicate Habeas Corpus Petition*

The Center for Constitutional Rights filed a duplicate next-friend habeas petition for Mr. Rahmattulah in 2006, one year after the instant petition. The style of that case is as follows: *Sangar Yar Mullah Rahmattulah v. Bush*, Civil Action No. 06-1681 (JDB). In late 2006, counsel spoke with

representatives of CCR and notified CCR of the duplication. At that time, CCR agreed to enter a motion to dismiss the petition it filed on Mr. Rahmattulah's behalf. It appears that CCR did not file the motion then, but it will do so imminently, according to one of its employees.

     5.    *Counsel Has No Present Access to Mr. Rahmattulah*

Counsel had adequate access to Mr. Rahmattulah when he was imprisoned at Guantanamo Bay, yet counsel has had no direct access to Mr. Rahmattulah since his transfer from Guantanamo Bay to Pol-e-Charky prison. Nor does it appear that counsel will have access to Mr. Rahmattulah so long as he remains under armed guard in Kabul. For this reason, counsel will lack both Mr. Rahmattulah's participation in this process and his consent (if any) to a dismissal or resolution of the habeas petition. At the very least, counsel requests that this Court permit him adequate time and opportunity to investigate the nature of Mr. Rahmattulah's present imprisonment and to attempt to make contact with him to discuss the very issues before this Court and Judge Kollar-Kotelly.

     6.    *Schedule for Status Conferences*

Counsel proposes that this Court convene an on-the-record status conference in which the parties can discuss these and any other issues that the Court raises. (Counsel lives in Atlanta, Georgia, and while he is happy to appear personally before this Court at any time, he proposes a telephone conference when possible.) Counsel suggests the first such call occur following counsel's reply to Judge Kollar-Kotelly's order to show cause, which is due on July 18, 2008. Counsel proposes the first call occur on Friday, July 25, 2008, and every two weeks thereafter (e.g., August 8, 2008, etc.).

### Conclusion

Counsel has provided this information and these proposals based on the facts available to him today. Counsel will gladly be available to discuss these and any other issues of concern to the Court at any time proposed by the Court.

Dated this the 14th day of July, 2008.

                               Respectfully submitted,

                               /s/ *W. Matthew Dodge*
                               W. MATTHEW DODGE (Pursuant to LcvR 83.2(g))
                               Georgia State Bar No. 224371
                               FEDERAL DEFENDER'S PROGRAM, INC.
                               Suite 1700, The Equitable Building
                               100 Peachtree Street, N.W.
                               Atlanta, Georgia 30303
                               Telephone: (404) 688-7530
                               Facsimile: (404) 688-0768
                               E-mail: Matthew_Dodge@fd.org