UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
------------------------------------------------------------ X
IN RE:                                          )
                                                )
PETITIONERS SEEKING HABEAS CORPUS               )    Misc. No. 08-0444 (TFH)
RELIEF IN RELATION TO PRIOR                     )
DETENTIONS AT GUANTANAMO BAY                    )
                                                )    Civil Action No. 04-1135 (ESH)
                                                )
                                                )
------------------------------------------------------------ X
```

## STATUS REPORT FOR PETITIONER MURAT KURNAZ

Pursuant to Judge Hogan's July 3, 2008 Order, Petitioner Murat Kurnaz, Civ. Case No. 04-1135 (ESH), respectfully submits this Status Report, which attempts to: (1) advise the Court of the prior, relevant proceedings associated with Kurnaz's habeas petition; (2) identify issues for resolution by the Court; and (3) identify a proposed schedule to advance Petitioner's proceeding.

## PROCEDURAL HISTORY

1.  Petitioner Murat Kurnaz is a Turkish citizen and lawful permanent resident of Germany. In November 2001, Mr. Kurnaz was travelling on a civilian bus in Pakistan, nearing the end of a religious pilgrimage and en route to the airport to take him home, when he was pulled off of the bus at a routine police check-point. Likely because of his Western appearance, he was questioned about the purpose of his travel, detained for several days, and ultimately turned over to the U.S. military on no more than the suspicion of being a foreigner in Pakistan during that time. He spent approximately two months in military detention in Kandahar, Afghanistan, before being flown to Guantanamo in around January 2002.

2.  In July 2004, through his mother acting as his "Next Friend," a petition for habeas corpus was filed on Mr. Kurnaz's behalf. The case was assigned to the Honorable Judge Edith S. Huvelle and docketed as Case No. 04-1135.

3.  In August 2004, Mr. Kurnaz's case was consolidated before Judge Joyce Hens Green with sixty-five other *habeas* petitioners' cases, for coordinated disposition of common issues. In October 2004, Respondents filed the factual return in Mr. Kurnaz's case, consisting of

1

the transcript of Mr. Kurnaz's Combatant Status Review Tribunal ("CSRT") and supporting exhibits, which purportedly supported the CSRT's confirmation of the executive's denomination of Mr. Kurnaz's President as an "enemy combatant." Respondents based Kurnaz's detention on two unclassified conclusions: first, that a friend of Mr. Kurnaz's from Germany had, some eighteen months after Kurnaz was detained in Guantanamo, "engaged in a suicide bombing"; and, second, that he "associated with" – i.e. he "received food and lodging" – from the missionary group, Jama'at al Tablighi, with whom he studied in Pakistan and that the (multi-million member) group has apparently had some members who have at some point engaged in acts "hostile to the United States or its allies." That same month, Respondents moved to dismiss the consolidated cases, on the grounds that, as aliens in foreign territory, they possessed no substantive rights to vindicate in habeas and that, in any event, the process given by the CSRTs were constitutionally sufficient.

       3.      On January 31, 2005, Judge Green denied in part and granted in part, Respondents' motion. In particular, Judge Green concluded that detainees held in Guantanamo Bay enjoyed fundamental due process rights in order to challenge their designations and that the CSRTs were severely flawed. In addition, she singled out Mr. Kurnaz's case as an example of "fundamental unfairness" of the CSRT system and suggested that, based on the factual return, the detention of Kurnaz was unlawful.

          a.      Addressing the allegation that Kurnaz was associated with an alleged suicide bomber, Selcuk Bilgin, she found that there was no evidence that Petitioner "had knowledge of his associate's planned suicide bombing, let alone [that would] establish that [Petitioner] assisted the bombing in any way. In fact, [Petitioner] expressly denied knowledge of a bombing plan when he was informed of it by the American authorities." *In re Guantanamo Bay Detainee Cases*, 355 F. Supp. 2d 443, 476 (D.D.C. 2005).[1] Further, Judge Green observed that the CSRT had made no allegation that Petitioner in any way "planned to be a suicide bomber himself, took up arms against the United States or otherwise intended to attack American interests." *Id*. at 470.

---

[1] Judge Green was not aware at the time that the charge was factually preposterous and could have been easily disproven, as the supposed suicide bomber is alive and well in Bremen, Germany and under no suspicion by authorities of any such conduct. *See* Carol D. Leonnig, *Panel Ignored Evidence on Detainee; U.S. Military Intelligence, German Authorities Found No Ties to Terrorists*, Wash. Post, Mar. 27, 2005, at A-1.

  b. Regarding the other unclassified basis for his detention – that he associated with and received "food and lodging" from a multi-member Muslim missionary group the U.S. government believes has had members who have supported terrorism – Judge Green ruled that "there is no evidence to establish that his studies involved anything other than the Koran." *Id*.

  c. Judge Green thus concluded that the U.S. government was holding Petitioner "possibly for life – solely because of his contacts with individuals or organizations tied to terrorism and not because of any terrorist activities that the detainee aided, abetted, or undertook himself" and that [s]uch detention . . . would violate due process." *Id*.

4. In addition, Judge Green highlighted the numerous exculpatory documents in Kurnaz's classified CSRT (and thus not made available to Kurnaz to contest his designation) that reveal that U.S. and German intelligence officials had authoritatively concluded that Kurnaz had no connection to terrorism. Those documents included:

- A September 30, 2002 Memorandum from military officials states that "CITF [Command Information Task Force] has no definite link/evidence of detainee having an association with al-Qaida or making any specific threat against the U.S." It also states that "The Germans confirmed that this detainee has no connection to an al-Qaida cell in Germany."

- A May 2003, Memorandum from General Brittain P. Mallow to the General Counsel of the Department of Defense reported that "CITF is not aware of evidence that Kurnaz is or was a member of Al Qaida." It also reported that "CITF is not aware of any evidence that Kurnaz has knowingly harbored any individual who was a member of Al Qaeda or who has engaged in, aided or abetted or conspired to commit acts of terrorism against the United States, its citizens or interests."[2]

5. Judge Green further concluded that the sole document purportedly supporting Kurnaz's enemy combatant designation was "rife with hearsay and lacking in detailed support for its conclusions, but is also in direct conflict with classified exculpatory documents not

---

[2] The portions of Judge Green's opinion citing to these documents were initially redacted by Respondents, and likely still appear as redacted in the Westlaw and Lexis versions of the opinion; however, they have all since been deemed unclassified by the Department of Defense in response to a FOIA action commenced in the Southern District in New York. The statements appear at pages 50-53 of Judge Green's Memorandum Opinion. *See also* Carol Leonnig, *Evidence of Innocence Rejected at Guantanamo*, Wash. Post, Dec. 5, 2007 (reporting on declassifications of such evidence). Citations to the newly unredacted version of the opinion will, therefore, be to Judge Green's Memorandum Opinion, rather than to the official reporter version.

disclosed to the detainee." *See* Green Mem. Op. at 50. Judge Green's opinion was stayed pending appeal to the D.C. Circuit and, ultimately, to the Supreme Court in the *Boumediene v. Bush/Al Odah v. Bush* petitions.

7. On August 24, 2006, Mr. Kurnaz was transferred to Guantanamo into the custody and control of the German government. Despite clear evidence of his innocence known to the U.S., he had by that point, spent nearly five years in U.S. military detention.

8. In October 2006, while Respondents' appeal of Judge Green's decision was pending, Respondents moved in the D.C. Circuit to dismiss Mr. Kurnaz's case (and others) as moot. Mr. Kurnaz opposed the dismissal on the grounds that there were collateral consequences to his enemy combatant designation. The issue was fully briefed, but never decided by the D.C. Circuit. Because the D.C. Circuit's decision in *Al Odah v. Bush* was reversed by the Supreme Court in *Boumediene v. Bush* and remanded to this Court, it appears the Respondent's earlier-filed motion to dismiss as moot has itself been mooted.

## PENDING ISSUES FOR DISPOSITION

9. Aside from the issues identified by Judge Hogan for consolidated disposition in his July 11, 2008 Order relating to, among other things, the scope of discovery, burdens of proof, Petitioner identifies two issues for disposition, neither of which are appropriate for consolidated treatment.

10. <u>First</u>, Petitioner anticipates that Respondents will want to renew their motion to dismiss Kurnaz's habeas petition as moot in this Court. Because all such issues will be fact sensitive, and because there is exists already applicable law relating to the doctrine of "collateral consequences" which would govern any such motion, consolidated treatment is unnecessary.

11. <u>Second</u>, Petitioner wishes to contest the lawfulness of his enemy combatant designation. Significantly, if Respondents intend to justify Petitioner's detention on the current record, Petitioner anticipates that disposition of the merits of his petition could happen summarily based upon that record and could be adjudicated very quickly. Specifically, Petitioner could present factual evidence (i) rebutting respondent's claim that his friend was in fact a suicide bomber, (ii) proving that he had no knowledge of, or participation in, any alleged terrorist activities of the multi-million member missionary group with which he associated; (iii) exculpatory evidence – independently obtained and from Respondents' own files – demonstrating that both U.S. and German intelligence repeatedly concluded he had no

connections to any terrorist activities. In addition, Petitioner intends to rely upon Judge Green's determination that Kurnaz's enemy combatant determination based on such mere association would violate due process as well as on the D.C. Circuit's recent decision in *Parhat v. Gates*, No. 06-1397 (D.C. Cir. June 20, 2008), limiting the government's authority to detain under the AUMF.

12. Petitioner submits that briefing of the foregoing procedural and substantive issues of law should occur simultaneously.

### PROPOSED SCHEDULE TO ADVANCE PROCEEDINGS

14. While Petitioner firmly believes individualized consideration of his petition is appropriate, he has no objection to deferring disposition of his case until after those involving detainees currently in custody at Guantanamo have proceeded.

15. Assuming consideration of Mr. Kurnaz's case is delayed, and assuming Respondent's do not intend to move to amend the factual return in his case, Petitioner submits that *seriatim* briefing on his case – which would combine the standing and merits issues – could be completed in eight to ten weeks.

Dated: Washington, D.C.
July 14, 2008

SETON HALL LAW SCHOOL
CENTER FOR SOCIAL JUSTICE
833 McCarter Highway
Newark, NJ 07102
(973) 642-8700
By: __/s/Baher Azmy_____
    Baher Azmy, admitted *pro hac vice*

KELLY DRYE & WARREN, LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007-5108
(202) 342 - 8400

By:___/s/Barry J. Pollack_____
    Barry J. Pollack, D.C. Bar No. 434513