IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>PETITIONERS SEEKING HABEAS CORPUS RELIEF IN RELATION TO PRIOR DETENTIONS AT GUANTANAMMO BAY | Misc. No. 08-0444 (TFH)<br><br>Civil Action No. 05-2336 (PLF) |

### PETITIONER'S RESPONSE TO JULY 2, 2008 ORDER TO SHOW CAUSE

Counsel for Petitioner Mohammed Al Amin respectfully submit this response to the Court's July 2, 2008 Order to Show Cause why this petition should not be dismissed as moot because Mr. Al Amin has been released from the custody of the United States, *Amin v. Bush*, No. 05-2336, Dkt. No. 44 (D.D.C. July 2, 2008).

Mr. Al Amin, after over five years of detention at Guantanamo without charge, has two requests:

- He would like to know why he was held for years without charge, and in harsh conditions and solitary confinement, even though he was not, in fact, a danger to this country or its citizens; and

- He would like to walk with his head held high, and to have the taint of his unlawful and unwarranted detention removed.

His request is particularly compelling as it appears that the Administration knew not long after his arrival at Guantanamo that Mr. Al Amin was not by any stretch of the imagination a terrorist, had no connection to the attacks on the United States and was not

a member of or affiliated with Al Qaeda or the Taliban. In fact, Mr. Al Amin had never even heard of Al Qaeda until after the attacks of September 11, 2001.

Counsel has met and conferred with counsel for the United States, who confirmed that the United States is unwilling to consider an admission of error, an apology for the horrific treatment that Mr. Al Amin endured, or even a more satisfactory explanation for the lapses that consumed six years of Mr. Al Amin's life.

The year that Mr. Al Amin was brought to Guantanamo, Donald Rumsfeld, then-Secretary of Defense, called the men detained there "the worst of the worst." Katherine Q. Seelye, *Threats and Responses: The Detainees*, N.Y. Times, Oct. 23, 2002, at A14. The Administration continued to portray the detainees as, in the words of General Myers, men so dangerous they "would chew through a hydraulics cable" to bring down a C-17 transport plane. Andrew Buncombe & Andy McSmith, *Five Years on, No End to the Horror that is Guantanamo*, The Independent, Jan. 9, 20007, at 2; Jane Mayer (reviewed by), *The Accused; The First-Person Story of a U.S. Prisoner in the War Against Terror*, Wash. Post., Sept. 10, 2006.

Yet, it was recently revealed that "from the moment that Guantanamo opened in early 2002, former Secretary of the Army Thomas White said, it was obvious that at least a third of the population didn't belong there." Tom Lasseter, McClatchy Newspapers, *Many at Gitmo Not Tied to Terror*, Belleville News Democrat, June 15, 2008, at A1. *See also* Jane Mayer, *The Hidden Power; the Legal Mind Behind the White House's War on Terror*, The New Yorker, July 3, 2006, at 44 (a CIA report sent to Washington in August 2002 concluded that many of the Guantanamo detainees "didn't belong there"); Greg Miller, *Many Held at Guantanamo Not Likely Terrorists*, L.A. Times, Dec. 22, 2002, at 1

(quoting "military sources with direct knowledge" as stating that many Guantanamo detainees "have no meaningful connection to al Qaeda or the Taliban").  Mr. Al Amin was among this group.

### Statement of Facts

Mr. Al Amin was brought to Guantanamo in August 2002.[1]  He obtained counsel in 2005, through an older prisoner who had an attorney and wanted to make sure that Mr. Al Amin, who was just over twenty years old, was represented.  A petition for habeas corpus relief was filed on Mr. Al Amin's behalf on December 6, 2005.  Counsel obtained the records of Mr. Al Amin's "Combatant Status Review Tribunal" on October 18, 2006.

In February 2007, counsel attempted to file a submission with the Department of Defense Annual Review Board ("ARB") on behalf of Petitioner arguing that even if the Government's facts were accepted as true, there was no basis for his continued detention.  Counsel was informed that the submission was unnecessary as Mr. Al Amin would not be receiving an ARB: he had already been "approved to leave Guantanamo."  *See* Exhibit A (Detainee Status Notification).  Counsel later learned that Mr. Al Amin had apparently been cleared for release for quite some time.

Although he had been "approved to leave," Mr. Al Amin continued to be detained in solitary confinement.  In desperation, Mr. Al Amin began a hunger strike to protest his continued detention without charge.  During his hunger strike, Mr. Al Amin was strapped in a restraint chair and force fed by a tube through the nose.  Mr. Al Amin described how

---

[1] Mr. Al Amin believes he was exchanged for a bounty by Pakistani authorities, a belief that is corroborated by independent investigations. *See* Amnesty International Report, *Pakistan: Human Rights Ignored in the War on Terror*, September 2006; Tom Burgis, *US Fuels Pakistan Bounty Market*, Financial Times, Sept. 28, 2006 (describing bounties earned by Pakistani police and government agents for rounding up "suspects").

for each feeding the tube was inserted and removed repeatedly, and jabbed into his stomach, and sinuses. The feeding mixture was pumped into him, until he vomited, at which point he was fed again, until he vomited again. He was left in the restraint chair for hours at a time. When the tube was yanked out, he would lose consciousness from the pain and shock. He would be doused with cold water and locked in a freezing cold room where there was a steel bunk, but no mattress and no blanket. Mr. Al Amin reported being subject to other mistreatment, including abuse that occurred after he was "approved to leave."[2]

Amnesty International took up Mr. Al Amin's case, and began a letter writing campaign on his behalf. *See*, Amnesty International, *USA: Who are the Guantanamo Detainees? Case Sheet 17: Mohammed Al-Amin*, July 14, 2006, attached as Exhibit B.

Five years after his arrival at Guantanamo, and long after being "approved to leave," Petitioner was finally released to his home country of Mauritania in September 2007.

Despite his mistreatment, Petitioner and his family have repeatedly expressed their gratitude, particularly to the many people in the United States and elsewhere who sent letters of support to him and his family, as part of Amnesty International's campaign on his behalf.

**Continuing Injury**

---

[2/] His reports are consistent with reports of other detainees and reports of well respected Human Rights organizations and the Federal Bureau of Investigation. *E.g.,* U.S. DOJ Report, *A Review of the FBI's Involvement in and Observations of Detainee Interrogations in Guantanamo Bay, Afghanistan and Iraq*, May 2008; Human Rights Watch, Guantanamo: Detainee Accounts 12 (2004), available at http://hrw.org/backgrounder/usa/gitmo1004; Neil A. Lewis, *Red Cross Finds Detainee Abuse in Guantanamo*, N.Y. Times, Nov. 29. 2004, at A1.

In *Hudson v. Hardy*, 424 F.2d 854, 855 (D.C. Cir. 1970), the Court of Appeals for the District of Columbia Circuit presided over a petition from a prisoner who contended that "officials of the District of Columbia, purporting to act pursuant to local law, had subjected him to cruel and unusual punishment [and] to punishment without cause." The Court of Appeals rejected the Governments' contention that the petition was moot because the punishment was over, finding "if his punishment was without cause, [the Appellant] is punished anew each time his record is used against him." *Id*. at 856 (citing *Burgett v. Texas*, 389 U.S. 109, 115 (1967) (finding that "admission of a prior criminal conviction which is constitutionally infirm . . . is inherently prejudicial").

Mr. Al Amin was released to his home country in Sub-Saharan Africa on September 27, 2007. That year, Mauritania transitioned to democratic rule after a bloodless coup deposed the prior rulers. *See* CIA, The World Factbook: Mauritania, last updated July 24, 2008, *at* https://www.cia.gov/library/publications/the-world-factbook/geos/mr.html. Mauritania qualifies for debt relief as a "Heavily Indebted Poor Country" and 40% of its population lives in poverty. *Id*. Many of its citizens seek opportunities abroad, as had Mr. Al Amin and members of his family.

Now, as governments cooperate in the global struggle against terrorism, the fact of Mr. Al Amin's detention is, and will continue to be, a factor every time he seeks employment in his home country and elsewhere. It will undoubtedly continue to limit his ability to support himself and his family.

Respondents' decision to release Mr. Al Amin with no more than a brief e-mail notification to counsel that he was "approved to leave" does not remove the continuing injury his wrongful designation as an enemy combatant has caused. In fact, that same e-

5

mail cautioned that the decision to release Mr. Al Amin "does not equate to a determination that your client is not an enemy combatant, nor is it a determination that he does not pose a threat to the United States or its allies." Ex. A. Mr. Al Amin's injury is compounded by Respondents' portrayal of all of the detainees as the "worst of the worst," even while knowing that many, like this Petitioner, were not only not the worst of the worst but in fact should not have been detained at Guantanamo at all.

The first day that counsel met Mr. Al Amin, he told counsel he had never before been to a jail, never committed a crime, never been in any trouble with the police. He said "they are trying to make me be another person, trying to make me say I am a terrorist. But I am a human being who never killed, never fought. I challenge them to make them prove I am a terrorist. If there is really justice, within five minutes in court, I can prove there is no case against me."

He has never had that opportunity.

## Conclusion

For the above reasons, Mr. Al Amin respectfully requests this Court afford him a fair opportunity to clear his name.

6

Dated:  August 6, 2008

Respectfully submitted,

Counsel for Petitioner:

_____/s/_____
Agnieszka Fryszman (DC 459208)
Avi S. Garbow (DC 445399)
Matthew K. Handley (DC 489946)
Matthew B. Kaplan (DC 484760)
**Cohen, Milstein, Hausfeld & Toll, P.L.L.C.**
1100 New York Ave, N.W., Suite 500
Washington, DC 20005
Tel:  (202) 408-4600
Fax: (202) 408-4699

John Holland (CO 5246)
Anna Cayton-Holland (CO 35811)
**Law Offices of John Holland**
1437 High Street
Denver, CO 80218

From: "Digiacomo, Matthew J Capt OARDEC, CYTW" <matthew.digiacomo@navy.mil>
Date: February 22, 2007 2:56:14 PM MST
Subject: Detainee Status Notification

Dear Counsel for ISN 706

 Through either the Administrative Review Board (ARB) process or the process DOD had in place prior to ARBs, your client has been approved to leave Guantanamo, subject to the process for making appropriate diplomatic arrangements for his departure. Accordingly, my prior guidance regarding submission of materials for a 2007 ARB for your client is inapplicable to this detainee; he will not be receiving another ARB proceeding.

 As you know, such a decision does not equate to a determination that your client is not an enemy combatant, nor is it a determination that he does not pose a threat to the United States or its allies. I cannot provide you any information regarding when your client may be leaving Guantanamo as his departure is subject to ongoing discussions.


DAVID N. COOPER, Lt Col, USAFR
Staff Judge Advocate
DOD HQ OARDEC
Office for the Administrative Review of the Detention of Enemy Combatants
Washington, DC

# USA

Who are the Guantánamo detainees?
## CASE SHEET 17
Mohammed Al-Amin
July 2006
AI Index: AMR 51/114/2006

Mauritanian National: Mohammed Al-Amin
ISN#: 706
Age: 24
Family status: Five sisters
Occupation: Student

Born in Nouakchott, Mauritania, Mohammed al Amin travelled to Saudi Arabia in his teens to study to the *Qu'ran*, leaving behind his mother, father and five sisters. He hoped to become a teacher. He later travelled to Pakistan to further his studies. He was arrested in Pakistan following the attacks on the US mainland on 11 September 2001. He was subsequently transferred to US custody, and was transported to Afghanistan and then Guantánamo Bay, Cuba. In each of these places he alleges that he was subjected to torture and other cruel, inhuman and degrading treatment. He remains in Guantánamo Bay, having never been charged with a criminal offence, over four years since his arrest.

**Arrest and treatment in Pakistan**
Mohammed al Amin was arrested in April 2002 in Peshawar, Pakistan. While in Pakistani custody, he told his lawyer, he was subjected to various forms of ill-treatment in order to force him to confess that he was a Saudi national. He spent two months in detention in Peshawar, where he states he was subjected to beatings, held for prolonged periods in solitary confinement and denied adequate food.

**Transfer to US custody, and Bagram**
*"Eventually, I told them what they wanted to hear and the torture stopped"*

In around June 2002, Mohammed al Amin was blindfolded, shackled and hooded and placed on a plane with several other detainees. He was taken to the US airbase at Bagram in Afghanistan. Mohammed al Amin was held in Bagram for two months, he told his lawyer that while there he "went through many tragedies". He alleges that:
- he was deprived of sleep;
- he was sexually abused;

- he was tied by his hands to the ceiling for days on end. He states that whenever he lost consciousness a guard would forcefully pull him up to wake him;
- US personnel told him that he would be transferred to Egypt to face further torture

Mohammed al Amin stated to his lawyers that after two months of this treatment, and in order to stop the abuse, he told his captors whatever they wanted to hear. "They wanted me to say I had come to join the Jihad" he stated in 2006 "Eventually I told them what they wanted to hear and the torture stopped".

**Guantánamo – "even worse than Bagram"**
Without being told what was happening to him, or where he was being taken, Mohammed al Amin was again shackled, hooded and blindfolded and strapped down in a military airplane. Disoriented, and feeling dizzy and sick, the flight lasted for several hours. Mohammed al Amin was shocked when he was told that he was in the US Naval Base at Guantánamo Bay, Cuba. He was given the detainee number, or ISN, 706 and had his name recorded by the Department of Defense as Mohammad Lameen Sidi Mohammad.

He states that in the first year he was held in Guantánamo Bay was "terrible" and "worse than Bagram". He states that he was subjected to sleep deprivation, sexual humiliation, and exposure to loud music. Like in Bagram he eventually relented and told his interrogators what they wanted to hear.

**Hunger Strike**
*"The strike started to prove a point – to request that the US government prove our presence here was justified or find us innocent"*

Mohammed al Amin, like most other Guantánamo detainees, has never been charged with any crime. His interrogations have stopped; he simply languishes in the US detention facility with no ability to challenge his incarceration. Mohammed al Amin is reportedly "hopeless" and told his lawyer that his faith in the US justice system is "almost nil". He told his lawyer that he longed for a chance to prove his innocence, or even to be charged and have access to any form of justice. "If there is really justice, within five minutes in a court, I can prove there is no case against me"

In protest at his continued indefinite detention and the lack of any charges against him, Mohammed al Amin embarked on a hunger strike in August 2005. Up to 200 detainees have participated in the strike. Al Amin states that camp authorities began force feeding hunger strikers at the end of that month.

In January 2006, the US authorities introduced a regime to more forcefully deal with those who continued the strike. Mohammed al Amin states that a new team of doctors arrived, armed with restraint chairs and thick feeding tubes, and a mandate to end the ongoing hunger strike.

When this new team arrived, Mohammed al Amin was taken out of his bed at the camp hospital and placed in solitary confinement in a cell in "Block Oscar". In this cell, painted black and without windows, the air conditioning was left on full, leading Mohammed al Amin to describe it as a "freezer". Guards would throw water on him to exacerbate the freezing conditions, and would wake him up if he fell asleep. At mealtimes, he would be taken to be force fed. The manner in which he was force fed may amount to cruel, inhuman or degrading treatment, or torture:

- He would be placed in a restraint chair by camp guards so that he was unable to move at all
- A large tube would be forced down his nose. On one occasion it was forced against the bottom of his stomach, which caused him severe pain. The doctor then stated that they

2

could not find the correct position and forcefully pulled the feeding tube from him. This entire procedure was repeated two or three times. He states that the tube would cause his nose to bleed

- He was deliberately over fed until he vomited, and when he vomited the force feeding would start again

- He was strapped in the restraint chair for periods of two to three hours at a time, which coupled with being overfed, led him to urinate and defecate on himself;

After the force feeding sessions, which would last much of the day, he would be dumped, covered in his own vomit, blood and faeces, back in his isolation cell. He persisted in his strike, but after 21 days of mistreatment in the chair and isolation, he could take no more and gave up.

In his own words, "they used physicians to commit crimes". He states that doctors would supervise the force feeding operations, watching while he was forced to vomit. On one occasion he says that a doctor asked him "are you going to quit the hunger strike or stay in this situation?"

Now, according to Mohammed al Amin, if a detainee misses a meal, all "comfort items" – such as reading materials, clothes – are removed, leaving the detainee in his cell with a thin mattress and a blanket.

# TAKE ACTION FOR
# Mohammed Al-Amin

**Write to the US authorities:**
- Calling for Mohammed al Amin to be released from Guantánamo unless charged and tried in accordance with international standards of fairness in a court that will not impose the death penalty;
- Urge them to immediately investigate all allegations that Mohammed al Amin has been tortured in US custody in Pakistan, Afghanistan and Guantánamo Bay, and to ensure that all those found responsible are punished
- Calling for them to keep Mohammed al Amin's family fully informed of his status, health and well-being, and ensure adequate communication with his family;
- Calling for them to close the detention facility at Guantánamo Bay and either release the detainees held there or charge and try them in accordance with international standards in a court that may not impose the death penalty
- Urging the US authorities to establish an independent and impartial commission of inquiry into all aspects of the US' "war on terror" detention policies and practices;

**Write to the Mauritanian authorities:**
- Asking what measures they are taking to ensure that Mohammed al Amin is either charged with a recognisably criminal offence or released
- Asking whether they have raised concerns with the US authorities over allegations that Mohammed al Amin was tortured in US custody;
- Calling on them to publicly state that, if returned to Mauritania, Mohammed al Amin will not be subject to further human rights violations, and will be released if he is not charged and tried in accordance with international standards of fairness.

3

**Write to the Pakistani authorities:**
- Calling on the Pakistani authorities to investigate all allegations that Mohammed al Amin was tortured while in Pakistani custody, and to bring all those found responsible to justice
- Calling on the Pakistani authorities to set up a commission of inquiry into all cases of "disappearance" and illegal transfers into US custody

The Honorable Alberto Gonzales
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington DC 20530 0001
Fax: + 1 202 307 6777
Email: AskDOJ@usdoj.gov

Mahfoud ould Btah
Minister of Justice
Ministry of Justice
BP 350
Nouakchott
http://www.mjustice.mr/

Mr. Mian Khurshid Mahmood Kasuri
Minister for Foreign Affairs
'S' Block
Pakistan Secretariat
Islamabad
Pakistan
Fax: 92-51-9202628, 92-51-9206254
Email: foreignminister@mfa.gov.pk or http://foreignminister@mfa.gov.pk

If you want to take further action on this case, please contact your national AI office
Amnesty International, International Secretariat, Peter Benenson House,
1 Easton Street, London WC1X 0DW, UK. www.amnesty.org